UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE: MIDLAND CREDIT MANAGEMENT, INC. TELEPHONE CONSUMER PROTECTION LITIGATION

Case No.: 11md2286-MMA (MDD)

Member Cases: 16cv2157-MMA (MDD)
16cv2768-MMA (MDD)

**ORDER DENYING LEAD PLAINTIFFS' MOTION FOR RECONSIDERATION AND CERTIFICATION FOR INTERLOCUTORY REVIEW**

[Doc. No. 675]

Lead Plaintiffs William Baker ("Baker"), Curtis Bentley ("Bentley"), and Emir Fetai ("Fetai") (collectively "Lead Plaintiffs") bring this putative class action for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq.* Doc. No. 651, Second Consolidated Amended Complaint ("SCAC"). On January 31, 2019, the Court granted in part Defendants Midland Funding LLC ("Midland"), Midland Credit Management, Inc. ("MCM"), and Encore Capital Group's ("Encore") (collectively, "Defendants") motion to compel Bentley and Baker (collectively, "Plaintiffs") to arbitrate their individual claims, strike class allegations, and stay this case pursuant to the Federal Arbitration Act ("FAA"). Doc. No. 669 ("Order"). Specifically,

1

the Court granted Defendants' motion to compel arbitration of Plaintiffs' claims on an individual basis, stayed their individual member actions, denied Defendants' request to stay the putative class action in this Multi-District Litigation ("MDL"), and denied Defendants' request to strike class allegations. *Id.* at 2. Plaintiffs move for reconsideration of the Court's Order, or alternatively, for certification for immediate interlocutory appeal. Doc. No. 673-1 ("Mtn."). Defendants filed a response in opposition [Doc. No. 679 ("Oppo.")], to which Plaintiffs replied [Doc. No. 680 ("Reply")]. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 681. For the reasons stated herein, the Court **DENIES** Plaintiffs' motion.

## RELEVANT BACKGROUND

Plaintiffs each opened a credit card account with Citibank, N.A. ("Citibank"). Doc. No. 601-6 ("Peck Bentley Decl.") ¶ 9; Doc. No. 601-5 ("Peck Baker Decl.") ¶ 9. Both credit card agreements contain a South Dakota choice-of-law provision and identical arbitration agreements. Doc. No. 601-4 ("Kilbury Bentley Aff."), Exhibit A at 6-7; Doc. No. 601-3 ("Kilbury Baker Aff."), Exhibit A at 6-8; Peck Bentley Decl., Exhibit 1 at 8; Peck Baker Decl., Exhibit 1 at 10-11. The two arbitration agreements contain the following language:

> ***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.***
>
> *Agreement to Arbitrate:* Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**What Claims are subject to arbitration?**
All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy. . . . Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?**
Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

. . .

**Broadest Interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the [FAA].

. . .

**What about debt collections?**
We and anyone to whom we assign your debt will not initiate an arbitration proceeding to collect a debt from you unless you assert a Claim against us or our assignee. We and any assignee may seek arbitration on an individual basis of any Claim asserted by you, whether in arbitration or any proceeding, including in a proceeding to collect a debt. You may seek arbitration on an individual basis of any Claim asserted against you, including in a proceeding to collect a debt.

. . .

*Survival and Severability of Terms*
This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or

3

> assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the entire arbitration provision shall not remain in force. No portion of this arbitration provision may be amended, severed or waived absent a written agreement between you and us.

Peck Bentley Decl., Exhibit 1 at 8; Peck Baker Decl., Exhibit 1 at 10-11. The credit card agreements also state that "[w]e may assign any or all of our rights and obligations under this Agreement to a third party." Peck Bentley Decl., Exhibit 1 at 9; Peck Baker Decl., Exhibit 1 at 12.

Citibank ultimately sold both accounts to Midland. Peck Baker Decl., Exhibit 2; Peck Bentley Decl., Exhibit 2. The bills of sale and assignment state that Citibank assigned to Midland both of Plaintiffs' accounts. Kilbury Bentley Aff., Exhibit A at 13; Kilbury Baker Aff., Exhibit A at 68. The purchase and sale agreements governing those sales state that Citibank assigned to Midland all right, title, and interest in Plaintiffs' accounts. Doc. No. 661-1 ("Banda Decl."), Exhibit A at 6, Exhibit B at 35.

## MOTION FOR RECONSIDERATION

### A. Legal Standard

A motion for reconsideration may be brought under Federal Rules of Civil Procedure 59(e) or 60(b). A motion is treated as a motion to alter or amend judgment under Rule 59(e) if it is filed within twenty-eight days of entry of judgment or the ruling; otherwise, it is treated as a Rule 60(b) motion for relief from a judgment or order. *Am. Ironworks & Erectors, Inc. v. N. Am. Construction Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001). Here, the Order was filed on January 31, 2019, and Plaintiffs' motion was filed on February 14, 2019. *See* Order; *see also* Mtn. Accordingly, Plaintiffs' motion is properly brought under Rule 59(e). *See Am. Ironworks & Erectors, Inc.*, 248 F.3d at 898-99.

Pursuant to Rule 59(e), district courts have the power to reconsider a previous ruling or entry of judgment. Fed. R. Civ. P. 59(e). Under Rule 59(e), it is appropriate to alter or amend a previous ruling or judgment if "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial

decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009) (citation omitted). Clear error or manifest injustice is established when "'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

**B.     Discussion**

Plaintiffs contend the Court committed clear error in four ways: (1) finding that Citibank could retain and assign its right to arbitrate; (2) finding the credit card agreements govern the relationship between the parties; (3) considering the redacted Purchase and Sale Agreements attached to Defendants' reply; and (4) interpreting the plain language of the arbitration agreements. Mtn. at 4. Defendants oppose each of these assertions. *See* Oppo.

*1.     Retention and Assignment of the Right to Arbitrate*

First, Plaintiffs contend that the Court improperly relied on Defendants' argument that Citibank could both retain its right to compel arbitration and assign that right to Midland because it was first raised in reply and is legally incorrect. Mtn. at 5-6.

Plaintiffs assert that it is procedurally improper for the Court to consider arguments first raised in reply. *Id.* at 5. In the motion to compel arbitration, Defendants argued that Midland, as the express assignee of Citibank, could enforce the arbitration provisions. *See* Doc. No. 601-1 at 24-30. Plaintiffs countered that the provision explaining "We and any assignee may seek arbitration" covers "debt collection claims against assignees only when they are asserted against both Citibank (i.e., "We") *and* its assignees." Doc. No. 652 at 12. Thus, Defendants' argument in reply that "the parties intended for Citibank, its assigns, or both to have the right to compel arbitration" was made in direct response to Plaintiffs' opposition. *See* Doc. No. 661 at 10. Although courts generally do not review issues raised for the first time in a reply brief, they may consider them if the new issue argued is offered in response to an argument raised in the opposition brief. *United States*

*v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (citing *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990)). Accordingly, it was not procedurally improper for the Court to consider Defendants' argument.

Plaintiffs also argue it is legally incorrect to find that "Citibank can simultaneously assign and retain its right to compel arbitration." Mtn. at 6; Reply at 4. As an initial matter, the Court did not determine that Citibank retained its right to compel arbitration because, as noted by Defendants, that question was not before the Court. *See* Order at 15. Rather, the Court determined that Citibank assigned its right to compel arbitration to Midland. *Id.* Notwithstanding the Court's reasoning, Plaintiffs argue Eighth Circuit law prohibits a party from assigning and retaining its right to arbitrate and that Citibank has previously arbitrated claims after assigning debt to Midland. *See* Reply at 4; *see also* Mtn. at 6.

First, Plaintiffs explain that the Eighth Circuit has repeatedly held that a party cannot assign and retain its rights under an arbitration agreement. Reply at 4 (citing *In re Wholesale Grocery Prods. Antitrust Litig.*, 850 F.3d 344, 349-51 (8th Cir. 2017); *Koch v. Compucredit Corp.*, 543 F.3d 460, 465-67 (8th Cir. 2008)). The Eighth Circuit cases cited by Plaintiff held that an assignor could not compel arbitration because all its rights had been assigned, *In re Wholesale Grocery Prods. Antitrust Litig.*, 850 F.3d at 349-51, and that an assignee could compel arbitration because it assumed all the assignor's remaining rights and obligations under the contract through assignment, *Koch*, 543 F.3d at 465-67. These cases are distinguishable because they do not apply South Dakota law, which is the applicable law in this case, and do not discuss a clause regarding survival and severability. *See In re Wholesale Grocery Prods. Antitrust Litig.*, 850 F.3d at 349 (applying Minnesota law) *Koch*, 543 F.3d at 465 (applying Arkansas law). However, the Court notes that the cases support its decision that assignees have a right to compel arbitration where there is a valid assignment.

Second, Plaintiffs contend that the fact "Citibank has compelled arbitration *after* assigning accounts to Midland in the past" evinces that Citibank did not extinguish its

own rights under the arbitration agreements. Mtn. at 6 (citing *Cain v. Citibank, N.A.*, Civil No. – JFM-16-2930, 2016 U.S. Dist. LEXIS 159153, at *2 (D. Md. Nov. 15, 2016)). The *Cain* court, considering the same arbitration agreement at issue in this case, noted that Citibank assigned "its rights under its credit card agreement" to Midland, but that the survival and severability of terms clause "provide[d] that the arbitration provision survives the termination or changes in the Agreement." *Id.* at *1-2. Thus, the court found that Citibank retained its right to compel arbitration. *Id.* However, in the very same order, the *Cain* court noted that Midland was also permitted to compel arbitration based on the same arbitration agreement. *Id.* at *2 (citing *Bey v. Midland Credit Management*, Case No. GJH-15-1329, 2016 U.S. Dist. LEXIS 38355 (D. Md. Mar. 23, 2016)).[1]

To be clear, the Court did not—and does not now—find that Citibank retained its right to compel arbitration after assigning that right to Midland. The Court merely found that Midland had properly been assigned that right. Plaintiffs' arguments do not alter that decision and the Court is not "left with the definite and firm conviction" that it erred in finding that Citibank assigned its right to compel arbitration to Midland. *See Smith*, 727 F.3d at 955 (internal quotation marks and citation omitted).

### 2. *Credit Card Agreements*

Plaintiffs next argue that the credit card agreements Defendants submitted are not associated with their accounts because they have a copyright date of 2011 and the fact sheet lists interest rates as of 2018. Mtn. at 10-1. Plaintiffs explain that "[t]here is simply no credible evidence the agreements mailed to Plaintiffs were consistent with [the credit card agreements proffered by Defendants]." Reply at 9.

---

[1] Plaintiffs contend *Bey* did not consider whether Citibank could still compel arbitration, and is, therefore, distinguishable. Mtn. at 8. However, the *Cain* court cited the survival and severability of terms provision that existed in both *Cain* and *Bey* to show that after assigning its rights, Citibank retained its right to compel arbitration. The *Cain* court's citation to *Bey* suggests that Midland also had the right to compel arbitration. *See Cain*, 2016 U.S. Dist. LEXIS 159153, at *2.

7

11md2286-MMA (MDD)

In its Order, the Court noted that Bentley opened a credit card account with Citibank in 2006 and Baker opened a credit card account with Citibank in 1996. Order at 7. Notwithstanding that notation, the Court found that the declarations and affidavits which attached the credit card agreements, were enough to prove valid agreements to arbitrate exist. *Id.* at 8. The Court finds no clear error in this conclusion. Before an item of evidence may be considered, Federal Rule of Evidence 901(a) requires a proper foundation be laid to authenticate the item by "evidence sufficient to support a finding that the item is what the proponent claims it is." *See Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987). Such a foundation may be laid by testimony of a witness who has personal knowledge. Fed. R. Evid. 901(b)(1). As William Peck, a Citibank document control officer, provides in his declarations, the credit card agreements bearing the 2011 copyright date are the applicable agreements to Plaintiffs' accounts. Peck Bentley Decl. ¶ 8; Peck Baker Decl. ¶ 8. Peck's declarations sufficiently lay a foundation for the exhibits attached thereto—he is a Document Control Officer of Citibank who made the declaration based on his personal knowledge, facts learned during his investigation of the matter, and Citibank's business records, which were created and maintained by Citibank or its affiliates in the course of regularly conducted business activity at or near the time of the act. *See* Peck Bentley Decl.; Peck Baker Decl.

Additionally, the agreements provide that they are "binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card." Peck Bentley Decl., Exhibit 1 at 6; Peck Baker Decl., Exhibit 1 at 8. The arbitration provisions themselves state that "Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration." Peck Bentley Decl., Exhibit 1 at 8; Peck Baker Decl., Exhibit 1 at 11. Further, Plaintiffs used their accounts after 2011. Kilbury Baker Aff., Exhibit A at 28 (showing Baker made a purchase in 2012); Kilbury Bentley Aff., Exhibit A at 41 (showing Bentley made a purchase in 2014). Thus, the documents proffered by Defendants govern the parties' relationships. *See Mounts v. Midland Funding LLC*, 257

F. Supp. 3d 930, 938 (E.D. Tenn. 2017) (finding a credit card agreement governed the parties' relationship where the date listed on the attached agreement post-dated the opening of the plaintiff's account, but where a declaration stated the agreement was applicable to the account and the plaintiff used or made payments on the account after the date of the attached agreement).

### 3. *Purchase and Sale Agreements*

Plaintiffs contend it was unfair and prejudicial for Defendants to attach redacted versions of the Purchase and Sale Agreements to their reply. Mtn. at 13. Defendants originally argued the bills of sale proved that Citibank assigned the right to compel arbitration to Midland and Plaintiffs countered that the Court could not make that determination absent review of the Purchase and Sale Agreements. *See* Doc. No. 652 at 15-16. Thus, the Court was permitted to consider the Purchase and Sale Agreements attached to Defendants' reply, as they were attached in response to an argument raised in the opposition brief.[2] *See Bohn*, 956 F.2d at 209 (citing *Eberle*, 901 F.2d at 818); *see also Rumpf v. Prog Leasing LLC*, No. CV-17-00111-PHX-GMS, 2017 U.S. Dist. LEXIS 83189, at *7-9 (D. Ariz. May 31, 2017) (denying leave to file a sur-reply because the new evidence was presented in support of the moving party's original argument and in response to the non-moving party's opposition).

Plaintiffs also assert the Purchase and Sale Agreements were unfairly prejudicial because they are heavily redacted. Mtn. at 13. Defendants state that "[a]ll relevant portions of the [Purchase and Sale Agreements] were left unredacted[.]" Oppo. at 14. In reply, Plaintiffs contend that "[n]othing in the unredacted portions of the Purchase and Sale Agreements . . . or Midland's affidavits actually manifests intent to assign Citibank's

---

[2] Plaintiffs also contend they intended to raise this issue at oral argument or in a sur-reply, but that the Order came out before Plaintiffs could move for leave to file a sur-reply. Reply at 7. The parties did not request oral argument. *See* Doc Nos. 601, 652, 661. Additionally, this Court's Chambers Rules specify that it generally resolves motions on the papers. *See* Civ. Chambers Rules III; *see also* Fed. R. Civ. P. 78(b). Further, Plaintiffs had more than a week between the filing of the Purchase and Sale Agreements and the Order to seek leave to file a sur-reply. *See* Doc. No. 661; Order; Docket.

right to compel arbitration to Midland" because they "do not say that Citibank is assigning its right to arbitrate to Midland." Reply at 5 (emphasis omitted). Additionally, Plaintiffs argue the Court improperly relied on Section 6.12[3] of the Purchase and Sale Agreements to show Citibank assigned its right to compel arbitration. Mtn. at 6; Reply at 5.

The Court considered the Purchase and Sale Agreements because the bills of sale indicated the sale was subject to the terms and conditions of the Purchase and Sale Agreements. Order at 13. However, the Court did not rely solely on the Purchase and Sale Agreements to show Citibank assigned its right to compel arbitration to Midland. *See id.* at 13-16. Rather, the Court relied on bills of sale and assignment, declarations and business records affidavits of Citibank document control officers and an MCM media manager, and the Purchase and Sale Agreements as a whole. *Id.* For example, the Court noted that the Citibank document control officers' declarations and business records affidavits stated that Midland was assigned all rights, title, and interest in Plaintiffs' accounts. *See* Peck Bentley Decl.; Peck Baker Decl.; Kilbury Bentley Aff.; Kilbury Baker Aff. MCM's Media Manager similarly declared "Citibank sold, assigned, and transferred to Midland Funding all rights, title and interest of [Plaintiffs'] Citibank [accounts.]" Doc. No. 601-2 ¶¶ 6-7. Additionally, the bills of sale and assignment state that Citibank sold, assigned, and transferred to Midland all rights title, and interest of a portfolio of charged-off accounts. Peck Bentley Decl., Exhibit 2; Peck Baker Decl., Exhibit 2. Further, the Purchase and Sale Agreements stated that Midland agreed to purchase from Citibank "all right, title and interest" of Citibank in and to the accounts. Order at 15. This language was noted throughout the agreements. *See id.*; *see also*

---

[3] Section 6.12 of the Purchase and Sale Agreements state that Midland "shall not initiate an arbitration proceeding in a collection action against a Cardholder based on a provision in an Account Document authorizing arbitration without prior written approval of [Citibank], and [Midland] shall provide [Citibank] with prior written notice in the event [Midland] otherwise initiates an arbitration action in a dispute with a Cardholder based on a provision in an Account Document authorizing arbitration." Banda Decl., Exhibit A at 17, Exhibit B at 46.

10

11md2286-MMA (MDD)

Banda Decl., Exhibit A-B. The Court highlighted Section 6.12 to show the agreements contemplate that Midland may initiate arbitration proceedings. *See* Order at 15.

Moreover, while the declarations and affidavits do not explicitly state that the right to compel arbitration was assigned to Midland, they show that "all rights, title and interest" were assigned to Midland. Peck Bentley Decl. ¶ 12; Peck Baker Decl. ¶ 12; Kilbury Baker Aff., Exhibit A at 13; Kilbury Bentley Aff., Exhibit A at 68. "The plain and ordinary meaning of 'all of [its] right, title and interest in and to' provides for assignment of all of [Citibank's] rights under the [credit card agreements], including the arbitration provision[s]." *Mark v. Portfolio Recovery Assocs., LLC*, No. 14-cv-5844, 2015 U.S. Dist. LEXIS 54498, at *8-9 (N.D. Ill. Apr. 27, 2015). Moreover, Courts have found sufficient evidence of assignment without review of purchase and sale agreements in similar circumstances. *See Funderburke v. Midland Funding, LLC*, No. 12-2221-JAR/DJW, 2013 U.S. Dist. LEXIS 13438, at *9-16 (D. Kansas Feb. 1, 2013); *Bey*, 2016 U.S. Dist. LEXIS 38355, at *9-23; *Marcario v. Midland Credit Mgmt.*, No. 2:17-cv-414(ADS)(ARL), 2017 U.S. Dist. LEXIS 175129, at *7 (E.D.N.Y. Oct. 23, 2017); *Biggs v. Midland Credit Mgmt.*, No. 17-CV-340 (JFB)(ARL), 2018 U.S. Dist. LEXIS 41146, at *16 (E.D.N.Y. Mar. 9, 2018). As a result, it was not clear error for the Court to find that Citibank assigned the right to compel arbitration to Midland based on the documents Defendants proffered.

### 4. *Plain Language of the Arbitration Agreements*

Plaintiffs claim the Court "erred in interpreting language from the fine-print definition of "Claims" and other locations in [the arbitration provisions]." Mtn. at 17. According to Plaintiffs, those provisions are irrelevant because Midland does not have the power to enforce the arbitration agreement. *Id.* Plaintiffs contend the "arbitration provision unambiguously provides that only two parties, the card issuer and the consumer, can enforce it. And the Survival Clause expressly prohibits parties from

amending the agreement absent a written, bilateral agreement."[4] *Id.* at 7. The Court addressed the same argument in its Order. *See* Order at 11-13. Plaintiffs' repetition of this argument does not meet their burden in a motion for reconsideration.[5] *See Kowalski v. Anova Food, LLC*, 958 F. Supp. 2d 1147, 1162 (D. Haw. 2013). Therefore, Plaintiffs have not provided the Court with any legal basis to find manifest error or law in its interpretation of the plain language of the arbitration agreements.

C.  **Conclusion**

The Court is not "left with the definite and firm conviction that a mistake has been committed" and, therefore, Plaintiffs have not shown clear error or manifest injustice. *Smith*, 727 F.3d at 955 (internal quotation marks and citation omitted). Accordingly, the Court **DENIES** Plaintiffs' motion for reconsideration.

## MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

Plaintiffs argue if the Court does not grant their motion for reconsideration, it should certify its Order for interlocutory appeal. Mtn. at 21-25. Plaintiffs make their request pursuant to 28 U.S.C. § 1292(b), which provides:

> [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). "Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly." *James v. Price*

---

[4] Plaintiffs distinguish several cases Defendants cited to show the plain language permits Defendants to compel arbitration. *Id.* at 8-9. However, the Court did not rely on any of those cases in support of its finding that the arbitration agreements contemplate that Citibank's assignees could compel arbitration. *See* Order at 11-12.

[5] Plaintiffs also assert for the first time that the arbitration agreements are contracts of adhesion and any ambiguity must be interpreted in their favor. Mtn. at 20. However, a motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citing *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

*Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002). As such, certification pursuant to section 1292(b) is appropriate "only in exceptional situations." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981) (citing *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1996)); *Milbert v. Bison Labs.*, 260 F.2d 431, 433-35 (3d. Cir. 1958)). The party seeking certification bears the burden of establishing that the requirements for it are met. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

Plaintiffs have not proven the requirements of 28 U.S.C. § 1292(b). In particular, Plaintiffs have not shown that certification would materially advance the ultimate termination of litigation. Certification materially advances the ultimate termination of litigation when allowing an interlocutory appeal would "avoid protracted and expensive litigation[,]" saving both the court and the parties "unnecessary trouble and expense." *Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1065-67 (D. Haw. 2013) (citations and quotation marks omitted).

Here, proceeding to arbitration, as opposed to certification of interlocutory appeal, will advance the termination of Plaintiffs individual member cases. "Certification of the Court's [Order] for appeal would delay, rather than advance, the termination of this case because it would 'require the parties to undertake proceedings at the appellate level before any arbitration could take place.'" *Appel v. Concierge Auctions, LLC*, No. 17-cv-2263-BAS-MDD, 2018 U.S. Dist. LEXIS, at *11-12 (S.D. Cal. Oct. 1, 2018) (quoting *Kaltwasser v. AT&T Mobility, LLC*, No. C 07-411 JW, 2011 WL 5417085, at *2 (N.D. Cal. Nov. 8, 2011)). Further, as noted by Defendants, the MDL putative class action will proceed with the third named Plaintiff, Mr. Fetai, regardless of whether Plaintiffs individual member actions are arbitrated. *See* Oppo. at 23. "When litigation will be conducted in substantially the same manner regardless of our decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *White v. Nix*, 43 F.3d 374, 378-79 (8th Cir. 1994); *see also Luchini v. Carmax, Inc.*, No. CV F 12-0417 LJO DLB, 2012 U.S. Dist. LEXIS 126230, at *27-28 (E.D. Cal. Sept. 5, 2012). As such,

13

11md2286-MMA (MDD)

the Court **DENIES** Plaintiffs' request to certify the Court's Order for interlocutory appeal.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion. Doc. No. 673. The parties are to proceed to arbitration as per the Court's prior Order. *See* Doc. No. 669 at 17-18. Plaintiffs' individual member actions (16cv2157-MMA (MDD) and 16cv2768-MMA (MDD)) remain stayed and administratively closed. *See id.* at 18.

**IT IS SO ORDERED**.

Dated: April 17, 2019

Hon. Michael M. Anello
United States District Judge